UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOHN EDWARDS and VERONICA
EDWARDS,
                      Plaintiffs,

                                      CIVIL ACTION

                                      No. 3:14-00772-JWD-EWD
VERSUS


VALERO REFINING-MERAUX, LLC;
STARCON INTERNATIONAL, INC.;
and BURNS AND MCDONNELL
ENGINEERING, INC.,
                      Defendants.


**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


**I.    INTRODUCTION**

Before the Court is the Motion for Summary Judgment ("MSJ"), (Doc. 20), filed by Valero Refining-Meraux, LLC ("Valero" or "Defendant"),[1] which seeks dismissal of every claim advanced by Mr. John Edwards, also known as Johnny Edwards ("John" or "Johnny"), and Mrs. Veronica Edwards, also known as Learonica Cole ("Veronica" or "Learonica") (collectively, "Plaintiffs"), in their first, second, and third complaints, (Docs. 1, 4, 28).[2] Plaintiffs have

---

[1] Though three defendants exist, (Doc. 1 at 2; Doc. 4 at 2), Valero alone filed the MSJ, (Doc. 20 at 1). Thus, this order opts for the singular.

[2] The first amended complaint did not substantively modify Plaintiffs' allegations; rather, it addressed certain technical deficiencies in accordance with the Magistrate Judge's sua sponte order, (Doc. 2). The second amended complaint substituted "John" for "Johnny" and "Veronica Edwards" for "Learonica Cole," (Doc. 28). Apparently, the original petition erred as to the

countered Defendant's MSJ with their "Memorandum in Opposition [to] Valero['s] Motion for Summary Judgment" ("Opposition"), (Doc. 24), to which Defendant filed a Reply Memorandum in Support of Motion for Summary Judgment ("Reply"), (Doc. 25). In light of prevailing law, which endorses the existence of the kind of dualistic contracts which bind Plaintiffs and Defendant here, Plaintiffs simply have not presented more than conclusory assertions and a scintilla of evidence. As a matter of rule and precedent, neither is sufficient to withstand a motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56,[3] the precise relief that Defendant now requests. Accordingly, as more fully explained below, the Court GRANTS Valero's Motion for Summary Judgment, dismissing with prejudice the claims advanced by Plaintiffs against Valero.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   RELEVANT FACTS

Husband of Learonica, Johnny, was working for Car-Ber Holdings, Inc. ("Car-Ber"), at a Valero-owned facility located in Meraux, Louisiana, on or about September 4, 2014. (Doc. 1 at 3; *see also, e.g.*, Doc. 15 at 1; Doc. 20-1 at 4.) On that fall date, "he was struck by a plug, which was blown out of a pressurized piping system"; he was "impaled" and knocked "violently into co-workers and other objects." (Doc. 1 at 3; *see also* Doc. 20-1 at 4 n.14.) As a result, he suffered "serious injuries" to his stomach, arms, shoulders, legs, head, neck, and spine, among others, all "requiring extensive medical care and treatment." (Doc. 1 at 3–4; *see also, e.g.*, Doc.

---

Plaintiffs' true names, (Doc. 26 at 1), and this Court will use the originally and newly listed names throughout this order.

[3] In this order, any and all references to "Rule []" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

15 at 1; Doc. 20-1 at 4 & nn. 14–15) Based upon these and other injuries, some to be proven at trial, Johnny sued Valero. (Doc. 1 at 4; *see also* Doc. 20-1 at 4.) With John so injured, Learonica endured her own separate and cognizable injury: "loss of consortium, services and society, thus entitling her to recover such damages as are fair and reasonable under the circumstances." (*Id.*; *see also* Doc. 20-1 at 4 n.16.)

On January 1, 2006, Car-Ber and Valero entered into a so-called "Multi-State Work Agreement," one bearing the number CORP06MS3167-00 ("Agreement"). (Doc. 20-1 at 1–2; *see also* Doc. 20-2 at 2, 3.) As a preliminary matter, "Work" is defined in the Agreement's fourth section and Exhibit A. (Doc. 20-2 at 12, 39, 40.) In effect at the time of Johnny's accidentt, (*Id.* at 2), the lengthy and repeatedly amended Agreement includes five crucial provisions. Exhibit L states the terms and conditions specific to facilities within Louisiana's borders and covered by the Agreement:

> Only and strictly with regard to claims, demands, suits and other liabilities by employees of Contractor or any of Contractor's subcontractors against Owner[, Valero], in connection with Work performed in the State of Louisiana, the parties acknowledge that performance of any Work by Contractor constitutes their recognition and agreement that a statutory employer relationship as envisioned by La. R.S. § 23:1061(A), as amended by Act 315 of 1997, exists between the Contractor and Valero.

("Exhibit L"). (Doc. 20-2 at 78–79.) This section stresses—"Such statutory employer relationship applies to Contractor's direct, borrowed, special or statutory employees"—and ends: "Further, the parties acknowledge that the Work to be performed under this Agreement is an integral part of, or essential to, the ability of Valero to generate its own goods, products, or services." (*Id.* at 79.) In other respects, Paragraph 13 of the Agreement defines "Contractor" narrowly: "In the performance of Work under this Agreement, Contractor shall at all times be an independent contractor, and the relationship of the Parties hereunder shall in no event be

construed as constituting any other relationship," ("Paragraph 13"). (*Id.* at 17; *see also* Doc. 24 at 2 (quoting *id.*).) Appendix 1 clarifies the relationship between the terms in the Agreement's main body and its exhibits: "In the event of a conflict between the terms and provisions of the main body of this Agreement and the terms and provisions of any Appendices, Exhibits, Annexes, Addenda hereto or any other material forming a part hereof, the terms and provisions of the main body of this Agreement shall govern and control," ("Appendix 1"). (Doc. 20-2 at 27; *see also* Doc. 24 at 3 (quoting *id.*).)

Beyond these three parts, the Agreement contains two other particularly relevant paragraphs. First, per Paragraph 47, "[a]ll . . . terms and conditions [set forth in Exhibit L] shall be binding upon the Parties as fully set forth in the main body of the Agreement." (Doc. 20-2 at 32.) It further qualifies the breadth of Appendix 1 by declaring: "In the event of any conflict between any of the express provisions of <u>Exhibit L</u> and any other express provisions of this Agreements, the provisions of <u>Exhibit L</u> shall govern and control." (*Id.* (emphasis in original).) Second, a savings clause ("Savings Clause") appears in a later subparagraph:

> In the event any provision herein shall be judicially interpreted or held to be void or otherwise unenforceable as written, it shall be deemed to be revised and modified to the extent necessary to make it legally enforceable, and the remaining terms of this Agreement shall not be affected thereby."

Car-Ber, Johnny's employer at the time, has never contested the validity of the Agreement.

B.   **PROCEDURAL HISTORY**

The first complaint was filed on December 12, 2014, (Doc. 1), and was first amended on December 16, 2014, (Doc. 4). One defendant, Starcon International Inc. ("Starcon"), answered on January 28, 2015, (Doc. 8), Valero on February 2, 2015, (Doc. 9), and Burns and McDonnell

Engineering, Inc. ("Burns"), submitted its own on February 9, 2015, (Doc. 13). Two closely related cases—*Bruce Jacob Fontenot v. Valero Refining-Meraux, LLC, et al*, No. 3:14-cv-00773-JWD-EWD, and *Bruce Kirk Fontenot v. Valero Refining-Meraux, LLC, et al.*, No. 14-cv-00774-JWD-EWD[4]—were reassigned to this Court on March 18, 2015, (Doc. 18), but no consolidation pursuant to Rule 42(a) has taken place, (Doc. 19). Defendant docketed the MSJ on May 15, 2015. (Doc. 20.) The Opposition arrived on June 5, 2015, (Doc. 24), and was followed by the Reply on June 19, 2015, (Doc. 25). As permitted by Court order, (Doc. 27), the Plaintiffs filed the second amended complaint on July 1, 2015, (Doc. 28), their substantive claims left untouched. Answers from Burns and Valero were docketed on July 2, 2015, and July 9, 2015, respectively. (Docs. 29–30.) Oral argument on the motion was heard on January 20, 2016, at 9:00 a.m. (Docs. 32, 35.)

### C.    PARTIES' ARGUMENTS

The Parties' arguments can be quickly summarized. In the MSJ and the Reply, Valero relies entirely on Exhibit L, which effectively classifies Valero as a statutory employer for purposes of the Louisiana Worker's Compensation Act ("Act"), encoded in Louisiana Revised Statutes § 23:1021 *et seq.*,[5] if sued by any contractor's employee, including Johnny. (Doc. 20-1 at 2, 6–7.) In its words, via Exhibit L, "the Agreement explicitly recognizes the statutory employer relationship between Valero and Car-Ber, which applies to Car-Ber's direct employees, such as the plaintiff." (*Id.* at 7.) Therefore entitled to the presumption that it is a

---

[4] These other cases' named plaintiffs were Johnny's coworkers and were also injured during the June incident. Based on the Parties' representations at oral argument, the two Fontenot plaintiffs are biologically related.

[5] In this ruling, any reference to "Section []" or "§ []" is to a section of this corpus of Louisiana law.

statutory employer as a matter of Louisiana statutory and contract law, Valero was and is immune from tort liability, and as Plaintiffs have never overturned this presumption, § 23:1021 must be their "exclusive remedy." (*Id.* at 6–8.) To further support the existence of such a relationship, Valero makes two more points. First, Car-Ber's work was "an integral part of, or essential to," its ability "to generate goods and services," as the Agreement itself states and as case law demands. (*Id.* at 8–9.) Second, when proffered similar agreements, Louisiana federal and state courts have found contractual clauses like those in Exhibit L, when construed in light of facts strongly evidencing a contractor's pivotal role, facts identical to the ones alleged by Valero, to establish the statutory employer relationship necessary to trigger application of § 23:1021. (*Id.* at 10–12.) Thus, Valero is immune from tort liability, and the first, second, and third complaints must fall. (*Id.* at 12.)

Conversely, Plaintiffs discern ambiguity in the Agreement that forecloses summary judgment. (Doc. 24.) Relying partly on the longstanding rule that tort immunity statutes like the Act should be narrowly construed and a single dissent by a state appellate judge, Plaintiffs insist that Exhibit L conflicts with Paragraph 13, the latter of which states that "[i]n the performance of Work under this Agreement, Contractor shall at all times be an independent contractor," (Doc. 20-2 at 17). (Doc. 24 at 4–5 (citing, among others, *Morgan v. ABC Mfr.*, 1997-0956 (La. 05/01/98), 710 So. 2d 1077, for the principle and the dissent from *Mitchell v. S. Scrap Recycling, LLC*, 2011-2201 (La. App. 1 Cir. 06/08/12), 93 So. 3d 754 (Kuhn, J., dissenting)). In their view, such an apparent discrepancy should compel application of Appendix 1's priority system, resulting in Paragraph 13's narrow definition of contractor overriding Exhibit L's classification schematic. (*Id.* at 5–6.) So characterized, the Agreement can be regarded as, at minimum,

ambiguous, such irresolvable vagueness rendering summary judgment wholly improper under Rule 56. (*Id.* at 8.)

Plaintiffs, however, do not rest on this supposed opacity alone. Instead, Plaintiffs insist that "Valero had not presented sufficient facts in this motion, or in discovery, to establish that the 'intentional act' exception to immunity does not apply." (*Id.* at 6.) Indeed, "Valero has produced no evidence in discovery as to why the plug flew out impaling . . . [Johnny,] flinging him into his fellow workers," a "type of thing that happens [not] in the absence of fault." (*Id.* at 7.) Such evidence is, however, still missing, having never been "produced." (*Id.*; *see also* Doc. 24-2 at 2.) Notably, in this attack, Plaintiffs seem to advance a policy argument predicated on an understandable distaste for the Act, one once shared by this state's supreme court:[6] "Defendants should not be able to both deny employee status for 'any purpose', and still benefit from employer immunity." (Doc. 24 at 6.)

Naturally enough, the Reply highlights the Opposition's seeming defects. (Doc. 25.) First, it stresses Plaintiffs' reliance on a single dissent, while it can point to the majority—and to the Fifth Circuit—in support of its position. (*Id.* at 1–2.) Second, reading the Agreement as "a whole," as Louisiana law mandates, the meaning of Exhibit L is plain and unambiguous: for purposes of the Act, it is and must be deemed a statutory employer of even a contractor's employees. (*Id.* at 3.) Third, Defendant disparages Plaintiffs' plea for delaying summary judgment until more evidence is uncovered, as Defendant has already answered Plaintiffs' discovery requests and "Plaintiffs have not yet alleged or put Valero on notice of intentional act claims." (*Id.* at 4.) Regardless, "[d]iscovery is not a perquisite to the disposition of a motion for

---

[6] *See infra* Part III.A.2.

summary judgment." (*Id.* at 4.) Plaintiffs' non-contractual arguments, in other words, are "a red herring." (*Id.* at 4, 5.)

### III. DISCUSSION

### A. GOVERNING LAW

#### 1. Rule 56

Rule 56 sets forth the standard applicable to the Motion. Per Rule 56(a), summary judgment is generally appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting Rule 56(a)). A dispute is "genuine" so long as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"; a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ray v. United Parcel Serv.*, 587 F. App'x 182, 186 (5th Cir. 2014) (citing *id.*). Axiomatically, a court construes all facts and evidence in the light most favorable to the nonmovant. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013). In response to another's motion, the nonmovant cannot rely on "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). Still, "[w]hen both parties have submitted evidence of contradictory facts," *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005), a court is bound to "draw all reasonable inferences in favor of the nonmoving party" and cannot "make credibility determinations or weigh the evidence," *Reeves v. Sanderson Plumping Prods.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000); *see also Anderson*, 477 U.S. at 248

(emphasizing the irrelevance of "[a]ny proof or evidentiary requirements imposed by the substantive law," materiality "not a criterion for evaluating the evidentiary underpinning of [factual disputes]"). Thus, this Court must "give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." 9A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2529 (2d ed. 1995). To wit, although this Court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151, 120 S. Ct. at 2110, *cited in Havera*, 723 F.3d at 591. Within the narrow ambit of Rule 56, summary judgment is hence inappropriate (1) if there are legitimate, not superficial or frivolous, factual disputes that may affect the outcome of the case under the applicable substantive law, *see Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510, and (2) so long as the nonmovant does not exclusively rely on "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "a scintilla of evidence," *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotation marks omitted) (citing, among others, *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *Hopper v. Frank*, 16 F.3d 92, 94–95 (5th Cir. 1994); and *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)).

One axiom comes into play in a case such as the one before this Court. Customarily, both a contract's unambiguity and a question of statutory interpretation are ideally suited for disposition by means of Rule 56. *See, e.g.*, *Abiodun v. Gonzales*, 461 F.3d 1210, 1215 (10th Cir. 2006); *TeamBank, N.A. v. McClure*, 279 F.3d 614, 617 (8th Cir. 2002); *Werbungs Und Commerz*

*Union Austalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021, 1026 (2d Cir. 1991); *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989). This precept, so firmly embedded in federal jurisprudence, holds true under Louisiana law too. *See, e.g.*, *Hall v. Malone*, 12–0264 (La. App. 4 Cir. 11/07/12), 104 So. 3d 593, 596; *Robin v. Wong*, 2007-0547 (La. App. 4 Cir. 10/24/07), 971 So. 2d 386, 388.

**2.      Substantive Law**

Under Louisiana law, "when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written." *Iteld v. Four Corners Constr., L.P.*, 2012-1504 (La. App. 4 Cir. 06/05/13), 157 So. 3d 702, 713 (relying on. LA. CIV. CODE art. 2046). Crucially, prevailing "rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent," *Edwards v. Daugherty*, 2003-2103 (La. 10/01/04), 883 So. 2d 932, 941. Further, "[o]ne provision of the contract should not be construed separately at the expense of disregarding other provisions," *Iteld*, 157 So. 3d at 713. Thus, when "its provisions are couched in unambiguous term," it must be applied, however harsh the result may be.[7] *Cadwallader v. Allstate Ins. Co.*, 02–1637 (La. 06/27/03), 848 So. 2d 577, 580.

---

[7] *Cf. Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 603, 815 (10th Cir. 2009) (acknowledging that the Court's conclusion—"Because Carolina Casualty had no legally cognizable duty to defend or indemnify a claim, plaintiffs' bad faith claim also cannot survive"—was "a harsh" but unavoidable result); *Corn Plus Coop. v. Cont'l Cas. Co.*, 516 F.3d 674, 682–83 (8th Cir. 2008) ("We acknowledge that the waiver produces a harsh result for Corn Plus[.]"); *Blue Cross & Blue Shield Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 325–26 (6th Cir. 1997) (noting that enforcement of a contractual provision that "clearly and unequivocally provide[d] for forfeiture of the right to use" certain "marks," permitted under

In 1997, the Act was amended in response to two opinions issued by the Louisiana Supreme Court. *Applegarth v. Transamerican Refining Corp.*, 00-1547 (La. App. 5 Cir. 02/28/01), 781 So. 2d 804, 806. Previously, a totality of circumstances test had reigned supreme. *Kirkland Riverwood Int'l USA, Inc.*, 26741-CA (La. App. 2 Cir. 06/21/95), 658 So. 2d 715, 720 (summarizing and refining this former touchstone). Afterward, the Act established that a contract between a principal and a contract that explicitly classifies the principal as a statutory employer for its delimited ends creates a rebuttable presumption in favor of such a statutory relationship. *See, e.g.*, LA. R.S. § 23:1061; DENIS P. JUGE, LOUISIANA WORKERS' COMPENSATION §7:7. Narrowly focused on demarcating an employer's liability, this law in effect permitted a dualistic contract; as the majority in *Mitchell* observed, "even if a worker is found to be an independent contractor [in terms of supervision or duties], he [or she] may still be subject to the workers' compensation laws if he [or she] is also determined to be a 'statutory employee' . . . ." *Mitchell*, 93 So. 3d at 759; *accord, e.g.*, *Zuccarello v. Exxon Corp.*, 756 F.2d 402, 410 (5th Cir. 1985); *Rodney v. Williams Olefins*, L.L.C., No. 14-cv-00368-SDD-SCR, 2015 U.S. Dist. LEXIS 119048, at *10–11, 2015 WL 5304110, at *3–4 (M.D. La. Sept. 8, 2015).[8]

**B.  APPLICATION**

Guided by these precedents,[9] this Court finds no legal merit in Plaintiffs' otherwise compelling argument.

---

Illinois law, was required even though "[t]hat may be a harsh result"). This tenet extends to the construal of statutes. *See supra* Part III.B.

[8]  More cases appear in a subsequent section of this ruling. *See infra* Part III.B.

[9] As this Court has recently observed, "[h]owever much a district court may disagree with an appellate court, a district court is not free to disregard the mandate or directly applicable holding of the appellate court," *Whole Woman's Health v. Cole*, 790 F.3d 563, 581 (5th Cir. 2015) (citing *United States v. Teel*, 691 F.3d 578, 582-83 (5th Cir. 2012)). Indeed, laws can often have hard

As an initial matter, the Agreement, if reasonably and fairly read, is not truly ambiguous under governing law. *See, e.g.*, *Johnson v. Motiva Enters., LLC*, 13-305 (La. App. 5 Cir. 10/30/13), 128 So. 3d 483, 491. Exhibit L defines Valero as a statutory employer of even its contractor's employees solely for purposes of worker's compensation, (*See, e.g.*, Doc. 20-2 at 78–79), a type of arrangement explicitly permitted under Louisiana law, *see supra* Part III.A.2. It even includes the kind of language—"the Work to be performed under this Agreement is an integral part of, or essential to, the ability of Valero to generate its own goods, products, or services," (Doc. 20-2 at 79)—that Louisiana courts, before and after 1997, have regarded as key to creating such a relationship, *see, e.g.*, *Applegarth*, 781 So. 2d at 804–05.

Paragraph 13, in turn, defines such statutory employees as "independent contractors" in "the performance of . . . [their] work" and not for liability purposes. (Doc. 20-2 at 17.) Exhibit L dictates how Valero will remedy an injury to a statutory employee, whether he or she would normally be regarded as an independent contractor, while Paragraph 13 specifies how such a contractor, as defined within the Agreement, must perform his or her appointed tasks. This construction is supported by Paragraph 47, which states that "[i]n the event of any conflict between any of the express provisions of <u>Exhibit L</u> and any other express provisions of this Agreements, the provisions of <u>Exhibit L</u> shall govern and control," and the Savings Clause,

---

consequences, *see supra* note 7, but the words must control absent certain inapplicable exceptions. *See, e.g.*, *Lamie v. U.S. Trustee*, 540 U.S. 526, 538, 124 S. Ct. 1023, 1032, 157 L. Ed. 2d 1024 (2004) ("Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding."); *Cent. Trust Co. v. Official Creditors' Comm. of Geiger Enters., Inc.*, 454 U.S. 354, 360, 102 S. Ct. 695, 698, 70 L. Ed. 2d 542 (1982) (per curiam) ("While the Court of Appeals may have reached a practical result, it was a result inconsistent with the unambiguous language used by Congress."); *cf. Bd. of Trs. of IBT Local 863 Pension Fund v. C&S Wholesale Grocers, Inc., Woodbridge Logistics LLC*, 5 F. Supp. 3d 707, 720 (D.N.J. 2014) ("Just because the application of . . . bright line rules sometimes leads to harsh outcomes does not mean that courts may deviate from them whenever doing so seems fair.").

which effectively mandates that discordant provisions be harmonized whenever possible. (*Id.* at 32, 34 (emphasis in original).) Additionally, considering that this reading synchronizes these provisions by utilizing the Agreement's express terms, no conflict sufficient to invoke Appendix 1 appears, as Plaintiffs argue. In sum, neither Paragraph 13 nor Exhibit L are ambiguous when read concurrently, as Louisiana law requires. Instead, pursuant to Paragraph 47, Johnny must be deemed a statutory employee of Valero.

Significantly, this construction has been endorsed by the Louisiana courts which have considered this issue. Thus, in *Mitchell*, the majority wrote: "[E]ven if a worker is found to be an independent contractor, he may still be subject to the workers' compensation laws if he is also determined to be a 'statutory employee.'" 93 So. 3d at 759. That same exact quote was highlighted—and that precise same conclusion was reached—by one other federal court, *Johnson v. Tenn. Gas Pipeline Co.*, 99 F. Supp. 2d 755, 758 (E.D. La. 2000), and originated in an even earlier opinion issued by a similarly inclined district court, *see Salmon v. Exxon Corp.*, 824 F. Supp. 81, 84 (M.D. La. 1993). Other federal and state decisions so concluding can be found, this litany's message unmistakable.[10] *See, e.g.*, *Morgan v. Gaylord Container Corp.*, 30 F.3d 586, 589–91 (5th Cir. 1994); *Simmons v. Honeywell Int'l, Inc.*, No. 12–674–SDD–RLB, 2013 U.S. Dist. LEXIS 151047, 2013 U.S. Dist. LEXIS 151047, at *5–8, 2013 WL 5720330, at *5 (M.D. La. Oct. 21, 2013) (Dick, J.); *King v. Rubicon LLC*, No. 10–096–BAJ–SCR, 2011 U.S. Dist. LEXIS 31847, at *6–10, 2011 WL 1136487, at *3–4 (M.D. La. Mar. 25, 2011) (Jackson, C.J.); *cf. Prejean v. Maintenance Enters.*, 2008–0364 (La. App. 4 Cir. 3/25/09), 8 So. 3d 766. By definition, one dissent, however "proper[]" it may strike Plaintiffs, (Doc. 24 at 4–5), or this

---

[10] Some of these cases predate the Act's 1997 amendment, but these changes were intended to strengthen the presumption, not weaken it. *See supra* Part III.A.2.

Court, cannot constitute law—and cannot override this precedent's overwhelming weight. True, contracts analogous to the Agreement may appear inconsistent. Yet, so long as they contain a paragraph akin to the one in the Agreement's Exhibit L, courts have consistently ruled that "the Louisiana Worker's Compensation Act provides the exclusive remedy in cases where employees seek damages for injuries that arise out of, and in the course of, employment, and are caused by the negligence of fellow employees," *King*, 2011 U.S. Dist. LEXIS 31847, at *7, 2011 WL 1136487, at *3. Bound by this same body of law and confronted with an identical factual situation, this Court must join this majority's construction of a statute and a contract repeatedly deemed both plain and unambiguous.

Plaintiffs argue that Valero has failed to prove that its conduct did not amount to intentional injury, a fact which would allow Plaintiffs to sue in tort even if Valero was Johnny's statutory employer. *Maldonado v. Kiewit La. Co.*, 2012-1868 (La. App. 1 Cir. 5/30/14), 157 So. 3d 309, *writ denied* 2014-2246 (La. 01/16/15), 157 So. 3d 1129. Plaintiffs, however, have made no such claim in any of their three separate complaints. (*See, e.g.*, Docs. 1, 4, 28.) Furthermore, even after Valero filed the MSJ, they have offered no evidence that remotely suggests intentional conduct on the part of Valero which, under the circumstances of this case, was their burden to do.  Finally, the record reflects and, at oral argument, Plaintiffs conceded, that no discovery had been propounded on this issue and Plaintiffs have not requested (nor are they requesting) additional time under Rule 56(d) to conduct such discovery. *See* FED. R. CIV. P. 56(d); *Shelton v. Bledsoe*, 775 F.3d 554, 567 (3d Cir. 2015). Under these circumstances, this particular argument in opposition to the MSJ must fail.

**IV.     CONCLUSION**

Under Rule 56, Plaintiffs were required to present more than a modicum of evidence that the Act is inapplicable to this case and that certain ambiguity infected the Agreement *in toto*. However, when it is construed in light of existing jurisprudence, the Agreement is neither abstruse nor confusing, and the Act's application is not open to reasonable doubt based on the allegations made and the facts before the Court under binding law. Accordingly, **this Court GRANTS Defendant's Motion for Summary Judgment**, (Doc. 20), dismissing Plaintiffs' claims against Valero with prejudice.

Signed in Baton Rouge, Louisiana, on January 28, 2016.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**